Carole JURICH, Individually and as Special Administrator of the Estate of Nicholas Jurich, Appellant–Plaintiff,

v.

GARLOCK, INC., et al., Appellees–Defendants.

No. 45A03–0010–CV–366.

Court of Appeals of Indiana.

Oct. 18, 2001.

Donald J. Berger, Berger, James & Gammage, South Bend, IN, Robert G. McCoy, Mark R. Penney, Cascino, Vaughn Law Offices, Ltd., Chicago, IL, Attorneys for Appellant.

David A. Temple, Lowe, Gray, Steele & Darko, LLP, Indianapolis, IN, Thomas W. Hayes, Law Office of William M. Koziol, Long Grove, IL, Attorneys for John Crane, Inc.

Thomas S. Ehrhardt, Kopka, Landau & Pinkus, Crown Point, IN, Attorney for WTI Rust Holdings, Inc.

## OPINION

BARNES, Judge.

### Case Summary

Carole Jurich, individually and as administrator of Nicholas Jurich's estate, appeals the grant of summary judgment in favor of Anchor Packing Company, Garlock Inc., John Crane Company, and WTI Rust Holdings, Inc., which was granted on the basis that the action was barred by the Indiana Product Liability Act's ten-year

statute of repose. We reverse and remand.

## Issues

There are two issues before us today:

I. whether the exception to the Indiana Product Liability Act's (PLA's) ten-year statute of repose for certain asbestos-related actions applied to these defendants; and

II. whether the PLA's general ten-year statute of repose, as applied to the Jurichs' claims, violates the Indiana Constitution.

## Facts

The facts most favorable to the summary judgment nonmovant, Carole Jurich, follow. Nicholas Jurich worked at Inland Steel in East Chicago from 1946 to 1986. In the 1950's, Mr. Jurich began to work as a pipe fitter at the mill; in 1970, he became a mill mechanic. His duties included the cutting of pipe covering insulation and the installation and removal of gaskets. Both of these processes resulted in the release of asbestos dust, which Mr. Jurich inhaled. He also worked near furnaces that used asbestos panels and he personally worked with a powdered form of asbestos that, when mixed with water, was used to temporarily patch holes in the furnaces. He also replaced asbestos-containing gaskets on the furnaces. Mr. Jurich was able to specifically identify some of the asbestos-containing products he handled as being manufactured by Garlock, John Crane, and Anchor Packing. He identified the furnaces as Swindell–Dressler models, and the trial court ruled in WTI's earlier motion for summary judgment alleging a lack of product identification evidence that there was "a fair showing that a line of responsibility for the manufacture and sale

of Swindell–Dressler furnaces can be extended to defendant WTI Rust Holdings, Inc." Record p. 1215.

On October 10, 1996, more than ten years after he ceased working for Inland Steel, a biopsy revealed that Mr. Jurich was suffering from mesothelioma.[1] This disease has a latency period of between five and seventy years. He and his wife Carole filed their first complaint against the defendants on April 3, 1997, seeking damages for personal injuries and loss of consortium. Mr. Jurich died of mesothelioma on November 19, 1997, and Mrs. Jurich has continued to prosecute the case on her own and the estate's behalf. The defendants moved for summary judgment on the ground that the Jurichs' claims were barred by the PLA's ten-year statute of repose and that they (the defendants) did not fall within the PLA's exception for certain asbestos-related actions. The trial court granted the motions on August 28, 2000, and this appeal ensued.

## Analysis

### I. Summary Judgment Standard

The standard of appellate review of a summary judgment ruling is the same as that used by the trial court: summary judgment is appropriate only where the evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Boggs v. Tri–State Radiology, Inc.,* 730 N.E.2d 692, 695 (Ind.2000). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmoving party. *Boggs,* 730 N.E.2d at 695. When the moving party asserts the statute of limitations as an affirmative defense and establishes

---

**1.** This is a rare form of cancer in which malignant cells are found in the sac lining the chest (the pleura) or abdomen (the peritone-

um). *See* National Cancer Institute Cancer-Net[tm], *at* *http://cancernet.nci.nih.gov* (last modified May 2001).

that the action was commenced beyond the statutory period, the burden shifts to the nonmovant to establish an issue of fact material to a theory that avoids the defense. *Id.*

## II. Exception to the PLA's Statute of Repose

The defendants argue that because Mr. Jurich was diagnosed with mesothelioma more than ten years after he ceased working at Inland Steel, which necessarily means more than ten years after he could have been exposed to asbestos from any of their products following their initial delivery, the PLA's ten-year statute of repose acts to bar the Jurichs' cause of action. Mrs. Jurich responds that the defendants fall within a legislative exception to the statute of repose for certain asbestos related actions.

Indiana Code Section 34–20–3–1(b) provides:

> Except as provided in section 2 of this chapter, a product liability action must be commenced:
>
> (1) within two (2) years after the cause of action accrues; or
>
> (2) within ten (10) years after the delivery of the product to the initial user or consumer.
>
> However, if the cause of action accrues at least eight (8) years but less than ten (10) years after that initial delivery, the action may be commenced at any time within two (2) years after the cause of action accrues.

Section 34–20–3–2, on the other hand, provides:

> (a) A product liability action that is based on:
>
> (1) property damage resulting from asbestos; or

> (2) personal injury, disability, disease, or death resulting from exposure to asbestos;
>
> must be commenced within two (2) years after the cause of action accrues....
>
> (b) A product liability action for personal injury, disability, disease, or death resulting from exposure to asbestos accrues on the date when the injured person knows that the person has an asbestos related disease or injury.
>
> \* \* \* \* \* \*
>
> (d) This section applies only to product liability actions against:
>
> (1) *persons who mined and sold commercial asbestos;* and
>
> (2) funds that have, as a result of bankruptcy proceedings or to avoid bankruptcy proceedings, been created for the payment of asbestos related disease claims or asbestos related property damage claims.
>
> \* \* \* \* \* \*
>
> (f) Except for the cause of action expressly recognized in this section, this section does not otherwise modify the limitation of action or repose period contained in section 1 of this chapter.

(Emphasis added).

 The trial court concluded that because there was no evidence that the defendants ever mined asbestos, this exception to the statute of repose did not apply to them. However, another panel of this court recently interpreted Indiana Code Section 34–20–3–2(d)(1) to mean that the statute of repose exception was intended to apply "to entities that sell commercial asbestos, even if they do not mine it." *Black v. ACandS, Inc., et al.,* 752 N.E.2d 148, 155 (Ind.Ct.App.2001)[2]. That inter-

---

**2.** In *Black,* we noted that we had not been previously presented with "cogent argument

and legal authority identifying the ambiguity of this section and directly addressing the

pretation strikes us as reasonable. We need not rehash the reasoning of the *Black* panel. We do note the rule of statutory construction that " '[a]ll statutory language is deemed to have been used intentionally. Words or clauses in statutes are to be treated as surplusage only in the absence of any other possible course.' " *Preston v. State*, 735 N.E.2d 330, 333 (Ind.Ct.App. 2000) (quoting *Baker v. State*, 483 N.E.2d 772, 774 (Ind.Ct.App.1985), *trans. denied* ). We find it difficult to accept that anyone would have mined and accumulated large quantities of asbestos strictly for their own use, or that such a product would have been distributed gratuitously. It would be redundant to place the words "and sold" after "persons who mined," unless "and sold" is interpreted to mean "persons who sold" commercial asbestos as separate and distinct from "persons who mined" and, as a matter of common sense, also necessarily sold asbestos at some point to some other entity. We also observe that a company that mined but did not sell asbestos would not have placed any asbestos into the stream of commerce, as required to sustain a product liability action, unless by some unlikely scenario in which a miner gave away its asbestos. *See* Ind.Code § 34–20–2–1.

The *Black* court, however, did not discuss whether sellers of "commercial asbestos" include entities that sold any asbestos-containing products. The same rule of construction that leads us to conclude that "and sold" refers to a different group of entities than miners—i.e., words

or clauses in a statute generally should not be considered surplusage—requires us to construe and give meaning to the word "commercial" as it modifies asbestos. "Commercial" has been defined as "[o]f, relating to, or being goods, often unrefined, produced and distributed in large quantities for use by industry." American Heritage College Dictionary 280 (3d ed. 2000).[3] Jurich cites us to 40 C.F.R. § 61.141 to support her argument that "commercial asbestos" includes any asbestos-containing product. However, our reading of the entirety of this Environmental Protection Agency regulation leads us to the opposite conclusion. The regulation states that "[c]ommercial asbestos means any material containing asbestos that is extracted from ore and has value because of its asbestos content." Elsewhere, there are clear indications that the EPA considered "commercial asbestos" to be a bulk product separate from asbestos-containing products, for example: "Fabricating means any processing ... *of a manufactured product that contains commercial asbestos....*" *Id.* (emphasis added). Also, "[m]anufacturing means the combining of commercial asbestos ... with any other material(s), including commercial asbestos, *and the processing of this combination into a product.*" *Id.* (emphasis added). Thus, we agree with *Sears Roebuck and Co. v. Noppert*, 705 N.E.2d 1065, 1068 (Ind.Ct.App.1999), *trans. denied*, to the extent that panel believed "commercial asbestos" did not refer to sellers of "products which contained some components

---

question of its meaning," *Black*, 752 N.E.2d at 152, and we distinguished our opinions in *Holmes v. ACandS, Inc.*, 711 N.E.2d 1289 (Ind.Ct.App.1999), *Novicki v. Rapid–American Corp.*, 707 N.E.2d 322 (Ind.Ct.App.1999), and *Sears, Roebuck, and Co. v. Noppert*, 705 N.E.2d 1065 (Ind.Ct.App.1999), in which we had only considered the exception in dicta.

3. The word is also defined as "[o]f or relating to commerce," i.e., "[t]he buying and selling of goods." *Id.* As already suggested, all asbestos would be commercial in this sense, unlike, for example, agricultural products, where one might reasonably expect that an individual farmer may consume some of his or her own products without placing them into the stream of commerce.

composed of asbestos." Here, the defendants sold asbestos-containing products, not "commercial asbestos," which we conclude refers to either "raw" or processed asbestos that is incorporated into other products. The legislature did not intend the exception to the PLA's statute of repose to apply to these defendants.

### III. Constitutionality of the PLA's Statute of Repose

█ Our conclusion that the legislature did not intend to include entities who sell asbestos-containing products, such as defendants, in the exception to the PLA's general ten-year statute of repose requires us to address Mrs. Jurich's constitutional challenges to that statute. If, as here, a product liability claim does not fall under the limited exception found in Indiana Code Section 34–20–3–2, the general ten-year statute of repose applies. Ind.Code §§ 34–20–3–1(b) and 34–20–3–2(f). We conclude that the PLA's statute of repose, to the extent used to bar the Jurichs' claims, is unconstitutional as applied to the facts of this case.[4] We limit our discussion of Mrs. Jurich's argument to Article I, Section 12 of the Indiana Constitution and will not address Article I, Section 23, keeping in mind that we should not "formulate a rule of constitutional law broader than is required by the precise facts at issue." *Martin v. Richey*, 711 N.E.2d 1273, 1282 (Ind.1999).

There are at least three contexts in which the statute of repose could be considered in this case. First, is the statute constitutional as applied to a plaintiff who is exposed to asbestos from and injured by a product more than ten years after that product's initial delivery? Second, is the statute constitutional as applied to a plain-tiff who is injured by a product within ten years of its initial delivery, but who has neither knowledge of nor any ability to know of that injury until more than ten years have passed? Third, in the absence of evidence of the length of time between a product's initial delivery and an injury (as was the case here), can the statute constitutionally be applied to a plaintiff who was injured by a product before the PLA's passage?

█ We need not definitively resolve the first question today, although at least one case from our supreme court strongly suggests that the statute would be constitutional as applied in such a factual scenario. That is, regardless of whether a product has an inherent defect at the time of its initial delivery, the statute of repose may properly bar product liability claims if no injury actually results from that defect until after ten years from the product's initial delivery. *See Dague v. Piper Aircraft Corp.*, 275 Ind. 520, 527–28, 418 N.E.2d 207, 211–12 (1981). Here, however, the defendants have made no claim that Mr. Jurich was exposed to asbestos from their products more than ten years after the products' initial delivery, nor have they designated any evidence that would support such a claim. All that the designated materials and defendants' assertions clearly establish is that the Jurichs did not sue until more than ten years after Mr. Jurich possibly could have been exposed to asbestos from any of their products. The statute of repose is an affirmative defense that the defendants bear the burden of proving. *See* Ind. Trial Rule 8(C); *Madison Area Educ. Special Serv. Unit v. Daniels*, 678 N.E.2d 427, 430 (Ind.Ct.App.1997), *trans. denied.* Summary judgment cannot be affirmed here based upon speculation, with

---

4. We emphasize that our analysis focuses on the constitutionality of the general statute of repose, Indiana Code Section 34–20–3–1, and not that of the exception to the statute, Indiana Code Section 34–20–3–2.

no basis in the record, that Mr. Jurich may have been exposed to asbestos from defendants' products more than ten years after the products' initial delivery.

■ As for the second and third questions, Article I, Section 12 of the Indiana Constitution provides: "All courts shall be open; and every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law. Justice shall be administered freely, and without purchase; completely, and without denial; speedily, and without delay." Our supreme court recently upheld the constitutional validity of Indiana Code Section 34–20–3–2 under Article I, Section 12 in *McIntosh v. Melroe Co.*, 729 N.E.2d 972 (Ind.2000). "However, a facially constitutional statute may be unconstitutional as applied to a particular plaintiff." *Martin*, 711 N.E.2d at 1279. *McIntosh* and its related predecessor, *Dague*, are distinguishable from the present case in at least two respects and do not convince us that the statute of repose is constitutional as applied to Jurich.

In *Dague*, an individual died after the thirteen-year-old plane he was piloting crashed on July 7, 1978. *Id.* at 522, 418 N.E.2d at 209. Our supreme court held that the ten-year statute of repose properly barred the product liability lawsuit of the pilot's widow. Her rights under Article I, Section 12's "open courts" provision were not affected because she "was not in the position of having had a vested right taken from her," and "at the time of her loss and damages, there was no cause of action existing, by virtue of [the ten-year statute of repose]." *Id.* at 528–29, 418 N.E.2d at 212–13. In *McIntosh*, the plaintiff was injured in an accident involving a skid steer loader that occurred thirteen years after the product's initial delivery. 729 N.E.2d at 973–74. Our supreme court said, "the General Assembly has deter-

mined that injuries occurring ten years after the product was delivered to a user are not legally cognizable claims for relief." *Id.* at 978. This was a permissible legislative choice to place a time limitation on product liability actions, consonant with Article I, Section 12. *Id.* at 980. Additionally, the supreme court clarified the difference between an "injury," for which the law may or may not provide a right to redress, as opposed to a legally cognizable "wrong." *Id.* at 979. It was a reasonable exercise of legislative power to provide that "after the product is in use for ten years, no further claims accrue." *Id.* at 978. Also, both the pilot in *Dague* and the plaintiff in *McIntosh* were injured after the PLA's effective date of June 1, 1978. *See* Ind.Code § 34–20–1–4.

In *Martin v. Richey*, the plaintiff's doctor failed to diagnose her breast cancer after conducting tests in March 1991, and the plaintiff did not learn she had cancer until April 1994, by which time the cancer had spread extensively into her lymph nodes. 711 N.E.2d at 1276–77. Plaintiff initiated a malpractice action in October 1994. *Id.* at 1277. The trial court granted summary judgment to the doctor on the ground that her claim was barred by the "occurrence-based" statute of limitations found in the Medical Malpractice Act, which purports to require malpractice claimants to file an action within two years of the alleged act, omission, or neglect. *Id.* at 1278 (citing Ind.Code § 34–18–7–1(b)). Our supreme court held the statute of limitations, although facially constitutional, was unconstitutional as applied to this plaintiff, and we quote extensively from their reasoning, which we find applicable to our case:

This Court has acknowledged ... that there is a right of access to the courts, and that the legislature cannot unreasonably deny citizens the right to exer-

cise this right. Similarly, we have reasoned that the legislature cannot deprive a person of a complete tort remedy arbitrarily and unreasonably, consistent with the protections Section 12 affords, and that legislation which restricts such a right must be a rational means to achieve a legitimate legislative goal. . . .

\* \* \* \* \* \*

If Section 12 has any meaning at all, it must preclude the application of a two-year medical malpractice statute of limitations when a plaintiff has no meaningful opportunity to file an otherwise valid tort claim within the specified statutory time period because, given the nature of the asserted malpractice and the resulting injury or medical condition, plaintiff is unable to discover that she has a cause of action. Stated another way, the medical malpractice statute of limitations is unconstitutional as applied when plaintiff did not know or, in the exercise of reasonable diligence, could not have discovered that she had sustained an injury as a result of malpractice, because in such a case the statute of limitations would impose an impossible condition on plaintiff's access to courts and ability to pursue an otherwise valid tort claim. To hold otherwise would be to require a plaintiff to bring a claim for medical malpractice before becoming aware of her injury and damages, an essential element of any negligence claim, and this indeed would be boarding the bus to topsy-turvy land.

*Id.* at 1283–84 (internal citations omitted).

We also find instructive the case of *Covalt v. Carey Canada, Inc.*, 543 N.E.2d 382 (Ind.1989). There, the defendants delivered raw asbestos to the plaintiff's employer, where the plaintiff worked from 1963 to 1971. *Id.* at 383. In 1986, the plaintiff was diagnosed with asbestosis and lung cancer, and he promptly sued defendants.

*Id.* Answering a certified question from the United States Seventh Circuit Court of Appeals, our supreme court held that "where the seeds of injury and latent disease are introduced into the body as a result of protracted exposure to a foreign substance, a plaintiff's cause of action cannot be barred by the [product liability] ten year statute of repose, no matter when the plaintiff knew or should have discovered the resultant disease." *Id.* at 385. The opinion was largely a matter of statutory interpretation, noting "[w]e cannot say that the Legislature intended the ten year statute of repose to bar claims such as this one, where the injury is the result of protracted exposure to a hazardous foreign substance." *Id.* at 386. This reasoning would seem to have been supplanted by the enactment of the limited exception to the statute of repose for some asbestos-related actions, (which was enacted while the case was pending before our supreme court), because it expressly provides that the statute of repose *does* apply if the exception is inapplicable. Ind.Code §§ 34–20–3–1(b) and 34–20–3–2(f).

Still, although the *Covalt* opinion does not expressly mention Article I, Section 12, it contains language very similar to cases interpreting and applying that constitutional provision, most notably foreshadowing *Martin v. Richey:*

> Moreover, the Legislature has the sole duty to determine what constitutes a reasonable time for bringing an action, *unless the period allowed is so manifestly insufficient that it represents denial of justice.* Accordingly, because of the long latency period with asbestos-related diseases, most plaintiffs' claims would be barred even before they knew or reasonably could have known of their injury or disease and *they would be denied their day in court if the ten year statute of repose were applied.* To re-

quire a claimant to bring his action in a limited period in which, even with due diligence, he could not be aware that a cause of action exists *would be inconsistent with our system of jurisprudence.*

*Id.* at 387 (emphases added). Furthermore, the *Covalt* court noted that *"Dague* is readily distinguishable from cases involving inherently dangerous foreign substances that are visited into the body." *Id.* at 386 (citing *Barnes v. A.H. Robins Co.,* 476 N.E.2d 84 (Ind.1985)). We also are not convinced by the defendants' argument that *Covalt* was only relevant to defendants who sold raw asbestos, based on the fact that the defendants in *Covalt* actually were sellers of raw asbestos to whom the legislative exception to the statute of repose would now apply. There is nothing in the opinion to indicate its reasoning was limited only to such defendants, although the court did expressly limit its holding to product liability actions. *Id.* at 387.

We are well aware of the basic difference between a statute of limitation and a statute of repose: a statute of limitation marks the time within which a claim must be brought *after* a cause of action accrues, while a statute of repose acts to bar a claim *before* it accrues. This difference does not save the product liability statute of repose in this case. On one hand, if Mr. Jurich was exposed to asbestos within ten years of the products' delivery, he did not suffer from any fully-manifested asbestos-related disease until much more than ten years after delivery; in *that* sense, his "cause of action" had not accrued before the statute of repose's deadline. It is clear from *McIntosh* that the legislature may provide that no cause of action may ever accrue if an injury arises after a certain "occurrence" date—i.e., in the PLA, the date of the product's initial delivery. However, latent diseases or injuries that take many years to become known pose a special problem—when does an "injury" occur or a "valid claim" come into existence? The date when a tort cause of action "accrues" is often defined, in the absence of legislative wording to the contrary, as the date when a plaintiff knew or should have known that he or she had suffered an injury due to another's product or act. *See Degussa Corp. v. Mullens,* 744 N.E.2d 407, 410 (Ind.2001). However, under this definition the plaintiff in *Martin* did not have an "accrued" cause of action within two years of the date of the wrongful occurrence—the alleged medical malpractice—because the very point of that case was that she could *not* have known or discovered that she was the victim of malpractice within that time frame. Where latent diseases or injuries are concerned, therefore, it appears from *Martin* that having a "valid claim," which cannot subsequently be extinguished by the legislature, is different from having an "accrued" cause of action, according to the usual definition of that phrase. On occasion, this court also has defined a cause of action as accruing "when a wrongfully inflicted injury causes damage." *Keep v. Noble County Dep't of Pub. Welfare,* 696 N.E.2d 422, 425 (Ind.Ct.App.1998), *trans. denied,* (citing *Monsanto Co. v. Miller,* 455 N.E.2d 392, 394 (Ind.Ct.App.1983)). This definition of an accrued cause of action, without reference to knowledge or ascertainability of the existence of an injury, seems applicable in cases of latent injury or disease when determining whether a "valid claim" exists for purposes of a statutory time limitation on when a "valid claim" may come into existence at all.[5]

---

**5.** Knowledge or ascertainability of the existence of an injury, however, is still relevant to determine when the two-year statute of limi-

tations for the PLA would begin to run. Here, there is no contention that the Jurichs failed to initiate their cause of action within

■ Both the pilot in *Dague* and the plaintiff in *McIntosh* suffered no "wrongfully inflicted injury" until after the effective date of the PLA and more than ten years after the initial delivery of the products. Mr. Jurich, on the other hand, allegedly inhaled asbestos dust from defendants' products for many years before the effective date of the PLA; after that date, there is no evidence that the products from which Mr. Jurich inhaled asbestos dust were more than ten years old. Experts estimate that it can take an asbestos-related disease between ten to forty and five to seventy years after exposure to manifest itself. Also, Mrs. Jurich designated an affidavit from Arnold R. Brody, Ph.D., who stated inter alia that "[t]he only established environmental cause of [mesothelioma] is exposure to asbestos.... Even though mesothelioma is a dose-responsive disease, this tumor has been shown to develop in individuals with relatively brief or light exposures, and no 'safe or threshold' level of exposure to asbestos has been determined for mesothelioma." Record p. 935. Mrs. Jurich also designated an affidavit from Richard A. Lemen, Ph.D., who opined that "[e]ach and every exposure to asbestos contributes to the development of an asbestos-related disease." Record p. 971. We discern

nothing in the designated materials that contradicts this evidence. Thus, Mr. Jurich's every exposure to asbestos from defendants' products injured his lungs and contributed to his development of mesothelioma. However, this disease did not manifest itself until more than ten years after exposure. In this case, enforcement of the statute of repose would bar otherwise valid claims before the Jurichs could have been expected to have knowledge of those claims. We conclude that this runs directly afoul of *Martin v. Richey.* The holding of that case was succinctly stated in *McIntosh:* "a claim that exists cannot be barred before it is knowable." 729 N.E.2d 972, 979 (Ind.2000).[6] We conclude that applying the PLA statute of repose in this case has precisely that effect and therefore violates Article I, Section 12 of the Indiana Constitution.

■ Even if the defendants here are able to establish that Mr. Jurich was exposed to asbestos from their products when those products were more than ten years old, we still believe the statute of repose could not be used to bar this action. We do not question the axiomatic principle that "individuals have 'no vested or property right in any rule of common law,'" and that "the General Assembly can make substantial changes to the existing law

---

two years of learning, or having the ability to learn, that Mr. Jurich was suffering from an asbestos-related disease.

6. Of course, we recognize that not everyone who is exposed to asbestos, even large quantities of it, will necessarily suffer from an asbestos-related disease, whether because of death by other causes before such a disease would manifest itself or because of other biological or pathological processes. However, to say that a person has a "claim" only at the time that an asbestos-related disease manifests itself, and that the ten-year statute of repose could act to prevent such a "claim" from accruing, would seem not to acknowledge the slow progression of such a disease and would

also seem to contravene *Martin.* It is conceivable that an act of medical malpractice might never result in an injury or disease that a plaintiff is aware of—for example, what if Melody Martin had been killed in an automobile accident before she became aware of her doctor's malpractice? The fact that some persons may never become aware of injury caused to them by another's wrongdoing, or may be fortunate enough not to suffer from a fully-manifested injury or disease, is not sufficient justification to prevent those who in fact *do* become aware of such injury or who *do* develop a disease of bringing a tort action within a reasonable time of having reason to become aware of such injury or disease.

without infringing on citizen rights." *McIntosh*, 729 N.E.2d at 978 (quoting *Dague*, 275 Ind. at 529, 418 N.E.2d at 213). The key distinction here is that the Jurichs did have a vested right, not in a rule of common law in the abstract, like the McIntoshes, but because he had been injured by defendant's products at a time when Indiana courts recognized common law product liability actions without an equivalent to the later-enacted PLA's statute of repose and thus without reference to the length of time a product had been in the stream of commerce. This court observed as long ago as 1938:

> It is broadly true that where the charge of negligence is based upon a breach of duty arising out of contractual relations, no cause of action arises in favor of one not in privity to such contract. As well settled and as authoritative as the general rule itself are certain exceptions. Such exceptions arise where one has, by sale or otherwise, put into circulation, so to speak, some noxious or imminently dangerous thing which is likely to cause serious injury to any person into whose hands it may come, *including poisons not labeled,* explosives, vicious animals, etc.

*Holland Furnace Co. v. Nauracaj*, 105 Ind.App. 574, 580, 14 N.E.2d 339, 342 (1938) (emphasis added). This case did not expressly recognize (or reject) the concept of strict product liability, but Mrs. Jurich's case is based on negligence as well as strict liability. By the early 1970's, the theory of strict product liability, as stated in Section 402A of the Second Restatement of Torts, was clearly the law in Indiana. *See Ayr–Way Stores, Inc. v. Chitwood*, 261 Ind. 86, 92–93, 300 N.E.2d 335, 339–40 (1973). There was no rule that automatically barred product liability claims if a person was injured after the product had been in use for a certain length of time, as the current statute of repose does. In fact, while courts recognized that all products eventually degenerate with age, the useful life of a product was considered "a question of fact to be determined in the trial." *J.I. Case Co. v. Sandefur*, 245 Ind. 213, 222, 197 N.E.2d 519, 523 (1964). Mr. Jurich allegedly inhaled and was injured by asbestos dust from defendants' products for at least twenty-five years before the PLA's effective date, from 1953 to 1978. During this period of protracted exposure to asbestos, there was no equivalent to the PLA's statute of repose, which places a strict time limitation on bringing product liability claims based on a product's age that did not exist at common law. To the extent his twenty-five years of asbestos exposure before the PLA's effective date contributed to Mr. Jurich's later development of mesothelioma, the statute of repose cannot constitutionally be used to bar claims stemming from that exposure. Otherwise, the Jurichs' valid claims under common law, which could not be known for many years, would be effectively retroactively barred by the PLA and their *vested* right to a complete tort remedy would be taken away by the legislature.

Finally, we find unavailing the defendants' argument that the PLA statute of repose is constitutional because of the limited exception to the statute of repose for miners and sellers of commercial asbestos, bankruptcy funds, or funds set up to avoid bankruptcy. The difficulty with the argument is that Section 12 promises that justice shall be administered "completely." By limiting the parties from whom an injured plaintiff otherwise could have sought recovery, his or her tort remedy is far from complete. This fact is highlighted by our supreme court's recent decision in *Owens Corning Fiberglass Corp. v. Cobb*, 754 N.E.2d 905, No. 49S04–0001–CV–00033 (Ind.2001), reh'g pending. There, a jury's monetary award to a plain-

tiff injured by asbestos was reversed and the case was remanded for a new trial on the basis that the trial court had improperly prevented the defendant from presenting a nonparty defense. 754 N.E.2d at 910–16. Although a plaintiff may be able to sue some liable parties under the PLA's statute of repose exception, those parties could raise a contributory negligence affirmative defense claim based on the alleged liability of nonparties, which parties the plaintiff may be unable to join as defendants because the ordinary statute of repose would bar claims against them. Therefore, the fact that the Jurichs may have sued some defendants for their asbestos-related injuries regardless of time limitations does not save the constitutionality of the PLA statute of repose under Section 12 as applied in this case.

In sum, we hold that the PLA ten-year statute of repose is unconstitutional as applied to a claim such as the Jurichs': where a plaintiff is injured by an asbestos-containing product either by exposure to asbestos fibers before the enactment of the PLA, and/or where there is no evidence the product was more than ten years old at the time the plaintiff was exposed to asbestos fibers contained in the product.[7] Such a time limitation is an unreasonable legislative impediment on the bringing of an otherwise valid claim, due to the very long latency period of the development of asbestos-related diseases and the impossibility of the plaintiff's knowing whether such a disease is slowly progressing in his or her body. This represents a denial of justice that is inconsistent with Article I, Section 12 of the Indiana Constitution, as interpreted by *Martin v. Richey.*

### Conclusion

The exception to the PLA's statute of repose for certain asbestos-related actions did not apply to these defendants, because they sold asbestos-containing products, not "commercial asbestos." However, the general PLA statute of repose, which would govern the claims against these defendants, is unconstitutional as applied to Mrs. Jurich's cause of action under Article I, Section 12 of the Indiana Constitution. We reverse the grant of summary judgment in favor of the defendants and remand for further proceedings consistent with this opinion.

Reversed.

DARDEN, J., and NAJAM, J., concur.

---

7. As suggested, if there was evidence that a plaintiff was injured, after the effective date of the PLA, by an asbestos-containing product that was more than ten years old, a different analysis and result may obtain.